UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>PLAINTIFF,<br><br>v.<br><br>LORI SWANSON, in her official capacity As Attorney General of the State of Minnesota,<br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil File No. 07CV 3376<br>)                    PSD/JJG<br>)<br>)<br>)<br>) |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This action seeks to prevent the imminent violation of federal rights guaranteed under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and the First Amendment threatened by MINN. STAT. § 13C.01, subd. 3. The new Minnesota law, which was signed on May 21, 2007 and is scheduled to become effective August 1, 2007, prohibits the sale of certain "prescreened" information provided by credit reporting agencies, even though federal law expressly permits the sale of that information, and precludes state regulation of any kind concerning that subject. As set forth herein, the new law is squarely prohibited by express preemption provisions of the FCRA. See 15 U.S.C. § 1681t(b). Moreover, it violates the First Amendment by prohibiting the communication of truthful and accurate speech, and by being vague and overbroad. Plaintiff Credit Data Industry Association ("CDIA") seeks injunctive and declaratory relief pursuant to 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 65.

2. Consumer reporting agencies provide various types of consumer reports. One type of report specifically permitted by the FCRA is called a "prescreened consumer report." See 15

SCANNED
JUL 17 2007
U.S. DISTRICT COURT MPLS

U.S.C. § 1681b. A prescreened report is a report provided to creditors identifying consumers who satisfy "screening" criteria the creditor specifies to the consumer reporting agency; under the FCRA, the creditor must certify to the consumer reporting agency that it will extend a "firm offer of credit"[1] to the consumers so identified. For example, mortgage lenders and brokers may wish to extend a firm offer of credit to consumers seeking a mortgage loan. Home improvement centers may wish to offer a preapproved credit card to consumers who have recently purchased homes. These creditors can set selection criteria so that they receive the names of prescreened consumers who are most likely to be in the market for a mortgage loan or most likely to respond to a credit card offer from a home improvement center. One of the selection criteria to identify these consumers would be whether a mortgage lender has recently made an inquiry about the consumer. This type of prescreened consumer report has been referred to as a "trigger lead," because one of the prescreening criteria is the occurrence of a "triggering" transaction (such as a mortgage loan inquiry).

3. In addition to expressly permitting prescreening and regulating the conditions for prescreening, the FCRA preserves uniformity by expressly prohibiting any State regulation of prescreening. Specifically, "No requirement or prohibition may be imposed under the laws of any state ... with respect to any subject matter regulated under" the FCRA sections "relating to the prescreening of consumer reports...." 15 U.S.C. § 1681t(b)(1)(A).

4. The new law directly violates this prohibition by purporting to ban a particular type of prescreening, i.e., prescreening that uses a mortgage loan inquiry as one of the screening criteria. The new law provides, in relevant part:

---

[1] The FCRA defines "firm offer of credit" to mean "any offer of credit ... that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer..." 15 U.S.C. § 1681a(l). The consumer must also meet the credit worthiness criteria that were established before the consumer's selection for the offer and furnish any required collateral. 15 U.S.C. § 1681a(l)&(3).

2

> ***A consumer reporting agency*** or any other business entity ***may not sell to***, or exchange with, ***a third party***, unless the third party holds an existing mortgage loan on the property, ***the existence of a credit inquiry arising from a consumer mortgage loan application when the sale or exchange is triggered by an inquiry made in response to an application for credit.***

MINN. STAT. § 13C.01(3) (emphasis added). Thus, the new law purports to preclude the sale of consumer reports that are expressly permitted under the FCRA and that are regulated under the FCRA's prescreening provisions. If the new law takes effect, both consumer reporting agencies, their customers and consumers will suffer immediate, irreparable harm.

## JURISDICTION

5. This action arises under the Supremacy Clause and First and Fourteenth Amendments of the United States Constitution, and under the FCRA, 15 U.S.C. § 1681t, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

## VENUE

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. In addition, Defendant Swanson is responsible for enforcing the new law within the State of Minnesota and this judicial district, and may be served at the Attorney General's office in St. Paul, Minnesota.

## PARTIES

7. Plaintiff CDIA is the leading trade association in the consumer information reporting services industry. Founded in 1906, and headquartered in Washington, D.C., its mission is to advance the interests of businesses in the consumer information reporting services industry, including its members' interest in the uniformity of federal regulation in areas in which

3

the FCRA preempts State regulation, as well as the interest of its members in the lawful sale of consumer reporting products permitted by the FCRA. CDIA assists its members in dealing with business and legal issues confronting the industry, provides professional education to its members, and represents and protects the interests of its members in legislative matters. CDIA is the largest trade association of its kind in the world, with a membership of more than 500 consumer credit and other specialized consumer reporting agencies operating in the United States and throughout the world. Its members include the three nationwide consumer credit reporting agencies, Experian, Equifax, and Trans Union, and many other consumer reporting agencies who report on Minnesota consumers. Under the newly enacted MINN. STAT. § 13C.01, subd. 3, all of CDIA's members that provide prescreened consumer reports will be prohibited from furnishing selected consumer report information to their customers.

8.   The interests that CDIA seeks to protect are germane to and in furtherance of CDIA's mission. CDIA's members will suffer immediate and irreparable harm if they are forced to even temporarily comply with a state law that is preempted by the FCRA and restricts free speech based on the content of the consumer report. The Court's favorable determination concerning the federal preemption, First Amendment and injunctive relief issues will alleviate this harm.

9.   Defendant Lori Swanson is the Attorney General of the State of Minnesota, and is charged with enforcing new law. *See* MINN. STAT. § 13C.04. This declaratory and injunctive action is brought against Attorney General Swanson in her official capacity.

## CIRCUMSTANCES GIVING RISE TO COMPLAINT

### Prescreening

10.  The text of the FCRA expressly prescribes for which "permissible purposes" a

consumer reporting agency may furnish a consumer report to a third party user. *See* 15 U.S.C. § 1681b. These permissible purposes expressly include "furnish[ing] a consumer report" when "the transaction consists of a firm offer of credit or insurance...." *Id.* § 1681b(c)(1)(B)(i). This process is often referred to as "prescreening" because the user provides the consumer reporting agency with selection criteria to identify consumers meeting the criteria; that is, the agency "prescreens" the consumer file information before providing the consumer report to the user.

11.  Among the prescreening products a creditor can permissibly use are so-called "triggers." These "trigger" products can be based upon criteria such as a mortgage inquiry, opening of a new account, a new address, or a score migration, among others. The occurrence of one of these events with respect to a particular consumer may satisfy a creditor's selection criteria and "trigger" the inclusion of the consumer (if the consumer meets the creditor's other prescreening criteria) on a prescreened consumer report provided to the creditor, who is then obligated to make a firm offer of credit to the identified consumer.

12.  The prescreening process, including consumer reports generated as a result of a mortgage application inquiry (sometimes referred to as "mortgage trigger leads"), is well-accepted and fully compliant with the FCRA. Indeed, it is particularly clear that mortgage triggers are permitted by and "regulated under," 15 U.S.C. § 1681t(b), the FCRA, in that the Federal Trade Commission ("FTC"), which enforces compliance with the FCRA, only recently completed a thorough review of mortgage trigger products and confirmed their validity. As explained by the FTC:

> When you apply for a mortgage, the lender usually gets a copy of
> your credit report. At that point, an "inquiry" appears on your report
> showing that the lender has looked at it. The inquiry indicates
> you're in the market for a loan. That's why mortgage companies
> buy lists of consumers who have a recent inquiry from a mortgage
> company on their credit report. ***Federal law allows this practice if***

5

> ***the offer meets certain legal requirements.***
>
> ***Clearly, some mortgage companies benefit from this practice. But the FTC says consumers can benefit, too: prescreened offers can highlight other available products and make it easier to compare costs while you carefully check out the terms and conditions of any offers you might consider.***

FTC Consumer Alert, *Shopping for a Mortgage? Your Application May Trigger Competing Offers* 1 (Feb. 2007) (available at http:www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt171.pdf) (emphasis added).

13. Consumers who prefer not to be included in prescreened reports are free to "opt out" of prescreening. The FCRA requires the nationwide consumer reporting agencies to establish and maintain a joint notification system, including a toll-free telephone number, that a consumer may use to prohibit the furnishing of the consumer's information as part of a prescreen program. *See* 15 U.S.C. § 1681b(e); *see also* FTC Consumer Alert, *Privacy: What You Do Know Can Protect You* at 1 <http://www.ftc.gov/bcp/conline/pubs/alerts/privprotalrt.shtm> ("If you decide that you don't want to receive prescreened offers of credit and insurance, you have two choices: You can opt out of receiving them for five years or opt out of receiving them permanently. Call toll-free 1-888-5-OPTOUT (1-888-567-8688) or visit www.optoutprescreen.com for details. The telephone number and website are operated by the major consumer reporting companies.").

14. If a consumer has, in the past, exercised his or her right to "opt-out" of prescreening, then the consumer reporting agency must exclude that consumer from the prescreened report it furnishers to a user, even if the consumer otherwise matched all of the selection criteria. 15 U.S.C. § 1681b(c)(1)(B)(iii), 1681b(e)(1), 1681b(l)(1)(B)(iii).

15. Beyond this, the FCRA requires any consumer report user who makes a written

firm offer of credit to any consumer whose name and address is obtained as part of the prescreening process to inform the consumer of the right "to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit or insurance transaction that is not initiated by the consumer...." 15 U.S.C. § 1681m(d)(1)(D).

### FCRA Preemption

16. The FCRA not only expressly permits prescreening, but also completely preempts any state law on the subject. In fact, prescreening is the first subject matter area listed among the areas in which the FCRA expressly prohibits state regulation. Specifically, 15 U.S.C. § 1681t(b)(1)(A) provides that:

> ***No requirement or prohibition may be imposed*** under the laws of any state:
> (1) ***with respect to any subject matter*** regulated under
> (A) subsection (c) or (e) of section 1681b of this title, ***relating to the prescreening of consumer reports....***

(emphasis added). The FCRA thus necessarily rules out, *inter alia*, any state prohibition that purports to regulate what criteria may be used in prescreening.

17. The legislative history to the FCRA's 1996 amendments makes clear that 15 U.S.C. § 1681t(b)(1)(A) was intended to preclude any kind of state regulation of prescreening, regardless of how a State would describe or define the regulated subject matter:

> Section 624 [now 15 U.S.C. § 1681t] provides that certain provisions of the FCRA preempt any corresponding provisions of state law. More specifically, ***under section [1681t], no state or local authority may impose any requirement, prohibition or other provision with respect to any subject matter regulated under Section 604(c) or (e) [1681b] relating to prescreening.*** Section 604(c) and (e) [1681b], among other things, provide that a consumer reporting agency may furnish prescreened lists in connection with a firm offer of credit or insurance, provided that the consumer reporting agency has established the opt-out notification system required under section 604 [1681b] and the consumer has not opted out. Section 604 [1681b] also specifies the information that a consumer

7

> reporting agency may furnish on a prescreened list. Section 624 [1681t] also preempts any state or local provision relating to the definition of "firm offer of credit or insurance" set forth in the Act. ***In short, under section 624 [1681t], any state or local authority is precluded from employing or establishing any provisions relating to any aspect of prescreening.***

S. Rep. No. 185 at 59-60, 104th Cong., 1st Sess. (Dec. 14, 1995), 1995 WL 747809 (emphasis added); *see also Jewett v. Capital One Bank*, No. B179794, 2006 WL 1085895, at *2 (Cal. Ct. App. 2006) ("Because Congress has established a pervasive regulatory scheme governing 'firm offers of credit,' ***it has expressly preempted any state regulation of the subject.***") (emphasis added).

18. Further relevant to this case, 15 U.S.C. § 1681t(b)(1)(E) provides, in pertinent part, that:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to ***any subject matter regulated under ... section 1681c of this title, relating to information contained in consumer reports***, except that this subparagraph shall not apply to any State law in effect on September 30, 1996....

(emphasis added). In conjunction with this provision, 15 U.S.C.§ 1681c regulates the content of consumer reports and describes certain information that consumer reporting agencies are prohibited from including in any consumer report as well as certain information that they are required to include. Section 1681c, in specifying the information that a consumer report may not contain, says nothing about omitting information relating to a particular type of credit inquiry from a consumer report.

### The New Minnesota Law

19. With the enactment of the new law, MINN. STAT. § 13C.01, subd. 3, the State of Minnesota seeks to prohibit what the FCRA not only expressly permits, but expressly precludes

8

any state from encumbering: namely, a particular prescreening criterion: the occurrence of a mortgage inquiry.

20. Legislative history confirms what the text of the statute makes clear: that the new law was specifically targeted at prohibiting prescreening triggered by mortgage inquiries.

21. CDIA's members have a reasonable fear of enforcement against them of the new law in actions brought by the Minnesota Attorney General, County Attorneys, or private citizens. CDIA's members are imminently threatened with such action under color of law because the new law becomes effective August 1, 2007.

22. CDIA and its members have no adequate remedy at law and will be irreparably harmed by even temporary compliance or defending against an enforcement action, whereas MINN. STAT. § 13C.01, subd. 3 is preempted and therefore unenforceable. The new law also irreparably harms Minnesota consumers who want to receive firm offers that may save them money or provide beneficial credit opportunities, but who will not because the State of Minnesota prohibits reports that include the content that would lead to such an offer. Conversely, no Minnesota consumers will be harmed if an injunction issues because each Minnesota consumer retains the opt-out right under the FCRA, 15 U.S.C. § 1681b(c)(1)(B)(iii), to preclude any consumer reporting agency from furnishing the consumer's name and address to any user who requests prescreened information (including mortgage trigger leads).

**COUNT I:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681t(b)(1)(A)**
**SUPREMACY CLAUSE, AND 42 U.S.C. § 1983**

23. CDIA restates and realleges each and every one of the foregoing paragraphs of this Complaint as though fully set forth herein and further states as follows.

24. As set forth more fully above, MINN. STAT. § 13C.01, subd. 3 purports to prohibit consumer reporting agencies from providing prescreened consumer report information to users who specify criteria that include a mortgage trigger. MINN. STAT. § 13C.01, subd. 3 is therefore expressly preempted by the FCRA's preemption provisions prohibiting state regulation of prescreening activity. 15 U.S.C. § 1681t(b)(1)(A).

25. 42 U.S.C. § 1983 provides a civil cause of action to any person who is deprived of rights guaranteed by the United States Constitution or federal laws by another under color of state law. In enforcing and threatening to enforce MINN. STAT. § 13C.01, subd. 3, the State will deprive consumer reporting agencies of rights granted under the Fair Credit Reporting Act. CDIA's members are imminently threatened with such action under color of law because MINN. STAT. § 13C.01, subd. 3 will be effective on August 1, 2007.

26. As consumer reporting agencies, many of CDIA's members are subject to the prohibitions set forth in MINN. STAT. § 13C.01, subd. 3, which is expressly preempted by the FCRA. Accordingly, there is an actual controversy over which this Court has jurisdiction to award declaratory and injunctive relief under 28 U.S.C. § 2201 *et seq.*

27. CDIA, therefore, requests that this Court declare MINN. STAT. § 13C.01, subd. 3 to be preempted by 15 U.S.C. § 1681t(b)(1)(A), (E), and 1681t(c), and further order all such equitable and injunctive relief as is necessary and proper to give effect to such declaration.

28. CDIA is further entitled to injunctive relief, including a temporary restraining order and preliminary and permanent injunction, pursuant to 28 U.S.C. § 2202, prohibiting the enforcement or attempted enforcement, under color of state law, of MINN. STAT. § 13C.01, subd. 3.

## COUNT II:
## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681t(b)(1)(E) SUPREMACY CLAUSE, AND 42 U.S.C. § 1983

29. CDIA restates and realleges each and every one of the foregoing paragraphs of this Complaint as though fully set forth herein and further states as follows.

30. In addition to the clear prohibition on certain prescreened reports, there is a risk that MINN. STAT. § 13C.01, subd. 3 might be interpreted by the Minnesota Attorney General, based on the act's imprecise language, as reaching beyond mortgage triggers to prohibit consumer reporting agencies from reporting previous mortgage loan application inquiries even in non-prescreened consumer reports that are provided to creditors to whom a consumer has applied for credit. If interpreted to require that the existence of certain credit inquiries be omitted from any consumer report furnished to a user who has requested the report in response to a consumer's application for credit MINN. STAT. § 13C.01, subd. 3 would impose regulations on the subject matter (i.e., the report content) of a consumer report.

31. If so interpreted, the Minnesota law is further preempted by the FCRA's subject matter preemption provisions expressly prohibiting state regulation of the content of consumer reports. Specifically, 15 U.S.C. § 1681t(b)(1)(E) provides, in relevant part, that:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to *any subject matter regulated under ... section 1681c of this title, relating to information contained in consumer reports*, except that this subparagraph shall not apply to any State law in effect on September 30, 1996....

(Emphasis added).

32. 15 U.S.C.§ 1681c regulates the *content* of consumer reports provided by consumer reporting agencies and describes the information that consumer reporting agencies are *prohibited* from including in any consumer report. Section 1681c, which specifies the

11

information that a consumer report may *not* contain, says nothing about omitting information relating to a particular type of credit inquiry from a consumer report.

33. As consumer reporting agencies, many of CDIA's members are subject to the prohibitions set forth in MINN. STAT. § 13C.01, subd. 3 that will become effective on August 1, 2007. The new law is expressly preempted by the FCRA. Accordingly, there is an actual controversy over which this Court has jurisdiction to award declaratory and injunctive relief under 28 U.S.C. § 2201 *et seq.*

34. CDIA and its members have no adequate remedy at law and will be irreparably harmed unless MINN. STAT. § 13C.01, subd. 3 is determined to be preempted and the defendant is enjoined from enforcing its provisions against any consumer reporting agency.

35. CDIA, therefore, requests that this Court declare MINN. STAT. § 13C.01, subd. 3 to be preempted by 15 U.S.C. § 1681t(b)(1)(E) and further order all such equitable and injunctive relief as is necessary and proper to give effect to such declaration.

36. CDIA is further entitled to injunctive relief, including a temporary restraining order and preliminary and permanent injunction, pursuant to 28 U.S.C. § 2202, prohibiting the enforcement or attempted enforcement, under color of state law, of MINN. STAT. § 13C.01, subd. 3.

### COUNT III: VIOLATION OF THE FIRST AMENDMENT

37. CDIA restates and realleges each and every one of the foregoing paragraphs of this Complaint as though fully set forth herein and further states as follows.

38. MINN. STAT. § 13C.01, subd. 3 prohibits consumer reporting agencies from reporting truthful, accurate and non-misleading information relating to a consumer's application for certain types of credit. As such, it is a content-based restriction that seeks to prohibit the free

expression that is protected by the First Amendment to the United States Constitution.

39. Regardless of whether the constitutionality of MINN. STAT. § 13C.01, subd. 3 is evaluated under the strict scrutiny standard applied to noncommercial speech, or the intermediate scrutiny standard that is applied to commercial speech, the new law cannot survive. The furnishing of truthful, accurate and non-misleading consumer report information is protected by the First Amendment, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 (1976) ("What is at issue is whether a State may completely suppress the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients. Reserving other questions, we conclude that the answer to this one is in the negative."). The regulation also does not meet the requirement that it be the least speech-restrictive means necessary to serving the government interest. *See Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 564 (1980).

40. Even assuming that MINN. STAT. § 13C.01, subd. 3 was enacted to promote a "substantial" governmental interest, such as protecting consumer privacy, and that it would "directly advance" that interest, MINN. STAT. § 13C.01, subd. 3 is demonstrably more extensive than is necessary to serve such an interest. First, in balancing consumer privacy interests against the benefit consumers may obtain from the firm offers of credit that result from the prescreening process, Congress created a narrowly-tailored mechanism within the FCRA that allows consumers to protect their own privacy interest while still promoting the "needs of commerce" and the "efficiency of the banking system." Through the opt-out system, any consumer may, by notifying the consumer reporting agencies, entirely prohibit the inclusion of his or her consumer report information in any prescreened list furnished by a consumer reporting agency to a user.

41. Unlike MINN. STAT. § 13C.01, subd. 3, which operates to completely prohibit consumer reporting agencies from furnishing prescreened consumer reports that identify consumers who have recent mortgage inquiries, the FCRA permits all consumers to receive the benefits offered through the firm offers of credit that result from such trigger leads to protect their own privacy on a consumer-by-consumer basis. MINN. STAT. § 13C.01, subd. 3 is, therefore, demonstrably more extensive than necessary to achieve any governmental interest that might have led to its enactment.

42. In addition, the new law is void under the First Amendment as it is vague and overbroad. Although unclear, the new law arguably could be read to prohibit consumer reporting agencies from including the record of the inquiry resulting from a mortgage loan application in any consumer report that is provided to any creditor in connection with a consumer's application for any kind of credit. Going one step further, the law could raise doubts about the calculation of a consumer's credit score. Though perhaps not intended, such broad readings are plausible interpretations. As a result, it is impossible for a person to be on notice of what is prohibited by the new law.

43. 42 U.S.C. § 1983 provides a civil cause of action to any person who is deprived of rights guaranteed by the United States Constitution or federal laws by another under color of state law.

44. In enforcing and threatening to enforce MINN. STAT. § 13C.01, subd. 3, the State will deprive consumer reporting agencies of the right to free expression protected by the First Amendment to the United States Constitution. CDIA's members are imminently threatened with such action under color of law because MINN. STAT. § 13C.01, subd. 3 will be effective on August 1, 2007.

45. CDIA and its member consumer reporting agencies have no adequate remedy at law and will be irreparably harmed unless defendant is restrained from enforcing or attempting to enforce MINN. STAT. § 13C.01, subd. 3.

46. For the foregoing reasons, CDIA is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that defendant's authority, under color of state law, to enforce, threaten enforcement, and actually enforce MINN. STAT. § 13C.01, subd. 3 violates and will violate the free speech rights of consumer reporting agencies, like CDIA's members, which are protected by the First Amendment of the United State Constitution.

47. CDIA is further entitled to injunctive relief, including a temporary restraining order and preliminary and permanent injunction, pursuant to 28 U.S.C. § 2202, prohibiting the States, either through the Attorney General or the county attorneys, while acting under color of state law in violation of 42 U.S.C. § 1983 from enforcing or attempting to enforce MINN. STAT. § 13C.01, subd. 3 against any consumer reporting agencies.

**PRAYER FOR RELIEF**

WHEREFORE, CDIA demands judgment against defendant as follows:

A. For declaratory judgment on Counts I and II that MINN. STAT. § 13C.01, subd. 3 is preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(A) and 1681t(b)(1)(E), and for such equitable and injunctive relief as is necessary and proper to give effect to such declaration, including a temporary restraining order and preliminary and permanent injunctions precluding any action to enforce or attempt to enforce any part of MINN. STAT. § 13C.01, subd. 3.

B. For declaratory judgment on Count III that MINN. STAT. § 13C.01, subd. 3 violates the First Amendment of the United States Constitution and for all such equitable and injunctive

relief as is necessary and proper to give effect to such declaration, including a temporary restraining order and preliminary and permanent injunction precluding any action to enforce or attempt to enforce MINN. STAT. § 13C.01, subd. 3 against any consumer reporting agencies.

C. For all costs of this action, including attorney's fees, pursuant to 42 U.S.C. §§ 1983, 1988.

D. For such other and further relief on all counts as the Court may deem just and proper.

Dated: 7-17-07

Respectfully submitted,

Lewis A Remele, Jr. (License #90724)
Christopher R. Morris (License #230613)
BASSFORD REMELE, PA
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402-3707
Phone: 612-333-3000
Facsimile: 612-333-8829

Anne P. Fortney
James Chareq
Lisa C. DeLessio
HUDSON COOK, LLP
1020 19th Street, NW
7th Floor
Washington, DC 20036
Phone: 202-223-6930
Facsimile: 202-223-6935

Attorneys for Plaintiff