UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> LORI SWANSON, in her official capacity As Attorney General of the State of Minnesota <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Case No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF ERIC ELLMAN

Pursuant to 28 U.S.C. § 1746, I, Eric J. Ellman, under penalty of perjury states as follows:

1. I am Vice President and Counsel, State Government and Federal Regulatory Affairs, for the Consumer Data Industry Association ("CDIA"). CDIA is an international trade association, founded in 1906, representing approximately 500 consumer credit and other specialized consumer reporting agencies operating in the United States and throughout the world. CDIA assists with the establishment of industry standards and provides business and professional education for its members. CDIA works with the United States Congress, state legislatures, and attorneys general to develop laws and regulations governing the collection, use, maintenance and dissemination of consumer-related information, including credit reports.

2. I am also an attorney, admitted to practice in Maryland and Pennsylvania.

3. On behalf of CDIA and its members, I often meet with state legislators and staff in state attorneys' general offices to educate them about the products and services offered by members and to discuss issues related to and consequences of proposed

legislation.

4. Upon learning of the Minnesota Attorney General's initiative to pass S.F. 241, which included a provision to amend Minnesota Statute section 13C.01 by adding sub. 3 (to prohibit the sale of certain information related to consumer reports provided pursuant to prescreening requests), I engaged in several meetings with Brian Bergson, Benjamin Wogsland, and Mark Ireland in the Minnesota Attorney General's office. I was joined by other concerned industry representatives at those meetings.

5. I advised the Attorney General's office of industry concerns about the new law, including that the Fair Credit Reporting Act ("FCRA") would preempt the new law.

6. The Attorney's General office exhibited hostility and unprofessional conduct during my conversations with them. The Attorney General's office did not dispute our interpretation that the new law would be preempted. However, the Attorney General's office informed me, as well as other industry representatives who were present during these conversations, that they were indifferent to the industry's concerns, including whether the new law was preempted.

7. The Attorney General's office also indicated that they fully intended to enforce the new law when it became effective.

8. As a result of the enactment of S.F. 241 based upon the Minnesota Attorney General's initiative, consumer reporting agencies are left with an ambiguous law and threatened enforcement action. If consumer reporting agencies expend resources to comply with a law that is preempted by the FCRA and violates First Amendment rights, then they will suffer irreparable harm in having complied with an ineffective and unenforceable law. Moreover, the consumers who have not chosen to opt-out of

prescreening offers will be irreparably harmed because they will not receive the benefit of certain prescreened offers for competitive credit products, which may only be available for a very limited time.

    I declare under the penalty of perjury that the foregoing information is true and correct and based upon my personal knowledge.

_____           7/17/2007
Eric Ellman                                                       Date



Madeleine Coogler
Notary Public
State of Texas
My Commission Expires
MARCH 07, 2009

Madeleine Coogler
Commission Expires 3/7/2009