UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION, <br><br>  Plaintiff, <br><br> v. <br><br> LORI SWANSON, in her official capacity As Attorney General of the State of Minnesota <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil File No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) |

### DECLARATION OF PATRICIA FINNERAN

Pursuant to 28 U.S.C. § 1746, I, Patricia Finneran, under penalty of perjury, state as follows:

1. I, Patricia Finneran, am currently employed by Experian Information Solutions, Inc. ("Experian") as Senior Manager, FileOne Infrastructure. The information provided below is based upon my personal knowledge.

2. Experian is a member of the Consumer Data Industry Association and provides a variety of consumer reports. Experian is a consumer reporting agency subject to the Fair Credit Reporting Act.

3. Among the reports provided by Experian is a type of consumer report referred to as a "prescreened report." "Prescreening" is the process whereby a consumer reporting agency such as Experian provides certain consumer report information on consumers who meet specific criteria to a client or a third party (such as a mailing service) on behalf of the client for use in soliciting these consumers for the client's products or services. Prescreening is permissible under the FCRA if the client agrees in advance that the transaction involving each prescreened

consumer will consist of a firm offer of credit. The criteria provided by the client may relate to creditworthiness or they may be designed to identify consumers who are likely to be interested in particular types of credit. For example, mortgage lenders and brokers may wish to extend a firm offer of credit to consumers seeking a mortgage loan.

4. One type of prescreened report product developed by Experian, known as Prospect Triggers$^{SM}$, assists lenders in identifying consumers in the market for a particular lending service. This product is provided by Experian first creating a prescreened list of consumers who meet the lender's creditworthiness criteria. Experian then monitors the consumers that meet those criteria and alerts the client when those consumers satisfy an additional criterion, such as having new credit accounts or new creditor inquiries post to their credit profile. In such a situation, the final criterion "triggers" the consumer's inclusion in a report to the client. One such prescreening criterion often specified by potential mortgage lenders to identify consumers who may be interested in their products is a recent credit inquiry reflecting a consumer mortgage loan application.

5. Experian is subject to and complies with the prescreening requirements of the FCRA, and has policies and procedures in place to ensure that consumers who have opted out of receiving prescreened offers are not included on any prescreened list. This includes prescreened lists to provide so-called "trigger leads." Experian has also programmed and maintains its computer systems to comply with the FCRA.

6. It is essential that there be a national, uniform standard so that Experian's systems, policies and procedures result in furnishing the most accurate information possible. Experian runs a single, nationwide system for prescreening, without variation for any state law.

7.   I am aware of Minnesota's new law that prohibits consumer reporting agencies from providing certain types of prescreened reports. This new law has significant implications, and complying with it, will require a substantial expenditure of time and resources, as well as considerable lost revenue, none of which Experian will be able to recover.

8.   Experian has always understood that the FCRA preempts any state law related to prescreening. The new Minnesota law prohibits a certain type of prescreening report from being furnished. Although Experian intends to take the steps necessary to comply with the law to the extent feasible by the August 1, 2007 effective date, and continuing thereafter, Experian will be irreparably harmed in several ways during any time period in which the law's enforcement is not enjoined:

9.   First, Experian will need to spend time, effort and resources to comply with a law that is vague and which it understands is unenforceable because it is preempted by the FCRA. Experian could face multi-million dollar costs to fully comply with all aspects of the law as written. Experian will not be able to recover the administrative costs and burdens in complying with the law by passing them on to purchasers of prescreened reports, because of the highly competitive nature of the marketplace and the diminished value of the product as then configured.

10.  Second, Experian will lose revenue as a result of not be able to sell certain types of consumer reports to users who want them to make offers to consumers who wish to receive such offers. Because of the nature of mortgage triggers, they are useful only during the window of time that a consumer is in the market for a mortgage product. Experian will lose all revenue from the sale of these products during the period that this law is enforced with respect to consumers that reside in Minnesota.

11. Third, Experian may need to take an extreme compliance approach so as to not violate the Minnesota law because the new law contains imprecise language that raises a risk of the law being interpreted as extending well beyond what Experian understands to be its intended scope (which is limited to mortgage trigger products). In particular, the law could be interpreted as prohibiting Experian from furnishing any consumer report – even one prepared for a lender to whom the consumer has applied for credit – that includes information that a mortgage lender or broker made an inquiry at some point about that consumer. In order to comply with this interpretation, Experian could be forced to go so far as to quit selling all consumer reports relating to consumers residing in Minnesota, resulting in millions of dollars of lost revenue and making it more difficult and more costly for Minnesota consumers to get credit. Even if Experian was able to adjust its systems to remove this data from consumer reports, this would result in the considerable expense of that adjustment as well as the omission of valuable information in consumer reports.

12. Fourth, the omission of mortgage inquiry information in consumer reports on Minnesota consumers would undermine the integrity of Experian's information and products. An inquiry on a consumer's credit report is a statistically reliable and predictive factor in the calculation of credit scores. If Experian cannot include mortgage inquiries in credit score calculations, the scores will be less predictive and therefore less useful in accurately evaluating consumers' creditworthiness. Creditors will be less likely to extend credit to marginal applicants – a result that will harm consumers, as well as creditors.

13. Fifth, Experian will not be able to include Minnesota consumers in certain prescreened lists, even if the consumer wants Experian to do so. Thus, the effect of the new law

would irreparably harm consumers who lose even the *option* to receive offers from creditors who might extend more favorable credit terms than those consumers have received.

14. Experian does not believe that the law is consistent with the FCRA requirements or that it offers any protection to consumers. Instead, it harms both Experian and consumers.

I declare under the penalty of perjury that the foregoing information is true and correct and based upon my personal knowledge.

_____  
PATRICIA FINNERAN

July 17 2007  
Date

Subscribed and sworn to before me  
This 17th day of July, 2007.

_____  
Notary Public

NIKOLE L. MARASCO  
Commission # 1476791  
Notary Public - California  
Orange County  
My Comm. Expires Mar 16, 2008

5