UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>LORI SWANSON, in her official capacity As Attorney General of the State of Minnesota,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil File No. _____<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF KEITH A. MCCAWLEY

Pursuant to 28 U.S.C. § 1746, I, Keith McCawley, under penalty of perjury states as follows:

1. I, Keith McCawley, am currently employed by Trans Union LLC ("TRANS UNION") as Director of Compliance. The information provided below is based upon my personal knowledge.

2. TRANS UNION is a member of the Consumer Data Industry Association. For more than 30 years, TRANS UNION has worked with businesses and consumers to gather, analyze and deliver information for businesses to better manage risk and customer relationships and for consumers to better understand and manage credit so they can achieve their financial goals. TRANS UNION provides a variety of consumer reporting products and services. TRANS UNION is a consumer reporting agency subject to the Fair Credit Reporting Act ("FCRA").

3. TRANS UNION provides services commonly referred to as "prescreening" to creditors and insurers for the purpose of making a pre-approved, firm offer of credit or insurance, such as a credit card, automobile loan, home mortgage, home equity line of credit, unsecured credit, installment loan or homeowner's insurance, to a consumer. Generally, the FCRA permits creditors and insurers to obtain limited consumer report information for the purpose of making an unsolicited firm offer of credit or insurance. In general, the FRCA states that a consumer reporting agency ("CRA") may furnish a consumer report in connection with any credit or insurance transaction if the:

- o consumer authorizes the CRA to provide his or her consumer report to such person; or
- o transaction consists of a firm offer of credit or insurance.

In addition, the consumer must not have elected (opted-out) to have his or her name and address excluded from lists of names provided by the CRA. The "prescreening" service applies criteria defined by the creditor or insurer to select consumers who are eligible for, and likely to respond to, a firm offer of credit or insurance. Typical criteria might include a credit risk score above a certain threshold, the absence of certain derogatory credit accounts, the presence of a minimum number of active credit accounts, residence in a particular geographic area, etc. As an example, the presence of a new mortgage account or a change in address could function as one of several criteria for selecting a consumer for a firm offer of installment credit at a home appliance center.

4. In a mortgage trigger prescreen, one of the criteria is the presence of an inquiry into the consumer's file by a mortgage broker or lender, suggesting that the consumer is actively seeking a secured home loan.

5. TRANS UNION is subject to and complies with all the prescreening requirements of the FCRA. In addition to implementing policies and procedures to ensure that consumers who have opted out of receiving prescreened offers are not included on any prescreened list, TRANS UNION voluntarily applies additional suppressions, such as the Direct Marketing Association Mail Preference Service and the National Do Not Call Registry. These suppressions are applied to mortgage trigger prescreened lists.

6. It is essential that there be a national, uniform standard so that TRANS UNION's information systems, business policies and operational procedures result in furnishing the most accurate information possible.

7. TRANS UNION has long understood that the FCRA preempts any state law related to prescreening. Many of TRANS UNION's information systems, business policies and compliance controls developed for use with prescreening have been developed based on this understanding.

8. I am aware of Minnesota's new law that appears to prohibit consumer reporting agencies from providing certain information or credit reports "when the sale or exchange is triggered by an inquiry". This new law, whether interpreted conservatively or liberally, would place significant burdens for compliance on TRANS UNION, requiring the expenditure of significant time and resources that may be unnecessary. Although TRANS UNION intends to take the steps necessary to comply with the law by the August 1, 2007, effective date, TRANS UNION will be irreparably harmed by this law in several ways.

9. First, TRANS UNION will need to spend time, effort and resources to comply with a law that is vague and which it understands is unenforceable because it is preempted by the

FCRA. TRANS UNION will not be able to recover the administrative costs and burdens in complying with the law because there would be no revenue gained from the undertaking. In fact, there will be lost revenue as these resources focused on this matter will be unavailable for other business opportunities.

10. Second, TRANS UNION will not be able to sell certain information or types of consumer reports to creditors who want them to make firm offers of credit to consumers who wish to receive such offers. Because of the nature of mortgage triggers prescreens, they are useful only during the window of time that a consumer is in the market for a mortgage product. TRANS UNION will not be able to calculate the loss from the inability to sell these products because TRANS UNION will not be able to determine how many mortgage lenders, mortgage brokers or other creditors would have purchased certain prescreen credit reports but for the Minnesota law. Additionally, when a consumer responds to a mortgage trigger prescreen firm offer, the creditor often obtains a full consumer report from TRANS UNION. As a result of the Minnesota law, TRANS UNION will experience losses from not providing these follow-up consumer reports. It is not possible to calculate the lost revenue and profit related to the follow-up consumer reports that will not be provided as a result of this new Minnesota law.

11. Third, because the statute is vague and susceptible to multiple interpretations, TRANS UNION may be required to exclude important information from consumer reports, even those reports furnished in response to a consumer application for credit.

12. Fourth, the omission of certain inquiry information in consumer reports on Minnesota consumers will undermine the integrity of TRANS UNION's information and products. Without inquiry information, consumer reports will be less reliable. Recent inquiries

may indicate that the consumer is in the process of acquiring additional debt not yet reflected in the credit file. The desire for additional credit is an indication of potentially increasing debt burden, which is directly related to credit performance. Generally, the likelihood of future delinquency increases as the number of inquiries increases. Thus, inquiries are often a factor in credit risk scores. Without inquiry information, credit risk scores will be less predictive. Credit risk scores that are less predictive are less accurate and less fair to consumers. A credit risk score that is less predictive will result in consumers who deserve credit being denied, or unfairly having to pay higher costs for credit. Likewise, it will result in more credit being extended to some consumers who should be denied. If credit risk scores cannot be relied upon to segment risk and price credit, all consumers will pay more for credit and creditors will needlessly have to take on more risk. Existing credit risk scores designed to consider inquiry information will need to be rebuilt; if not, the integrity of current commercially available and custom creditor risk scoring models is jeopardized. Credit scores developed without the information will be less predictive.

13. Fifth, TRANS UNION will not be able to include Minnesota consumers in certain prescreened lists, even if the consumer wants to be included in such lists. Thus, the effect of the new law would irreparably harm TRANS UNION's business relationships with those Minnesota consumers who are proactively attempting to improve their credit reports in order to become eligible for more competitive offers.

14. TRANS UNION does not believe that the law is consistent with the FCRA requirements or that it offers any protection to consumers. Instead, it harms TRANS UNION, Minnesota consumers and users of prescreens alike.

I declare under the penalty of perjury that the foregoing information is true and correct and based upon my personal knowledge.

_____          _7/17/07_
Keith A. McCawley                              Date

STATE OF ILLINOIS    )
COUNTY OF COOK      )

I, Jeffrey S. Yosowitz, a Notary Public in the State of Illinois, do hereby certify that Keith A. McCawley personally signed the above Power of Attorney before me this __17th__ day of __July__, 2007.

_____

OFFICIAL SEAL
JEFFREY S. YOSOWITZ
Notary Public - State of Illinois
My Commission Expires Mar 01, 2011

My Commission Expires: _March 1, 2011_

6